FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 02 OCT 22 PM 3: 45
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

SAMUEL T. STRIEGEL, JR.,        )
                                )
        Plaintiff,              )
                                )
v.                              )        CV 00-AR-3340-J
                                )
FAYETTE COUNTY COMMISSION,      )        ENTERED
et al.,                         )
        Defendants.             )        OCT 22 2002

## MEMORANDUM OPINION

Before the court are motions for summary judgment by defendant Fayette County Commission ("Commission") and by defendant, Richard White, Sheriff of Fayette County, ("White"). Plaintiff, Samuel T. Striegel, Jr. ("Striegel"), instituted this action against the Commission and White, who is being sued both in his individual capacity and in his official capacity. Sriegel invokes both the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA") and 42 U.S.C. §§ 6101-6107, which prohibits age discrimination in government funded programs. Striegel also appends a state law minimum-pay claim under Ala. Code § 6-2-33(3). Striegel has failed to argue his claim under 42 U.S.C. §§ 6101-6107 or his claim for minimum-pay under state law at the summary judgment stage, and accordingly the court will consider these claims abandoned.

To meet the jurisdictional requirements of the ADEA Striegel alleges either that the Commission and White are joint employers

1

48

for purposes of the ADEA,[1] or, in the alternative, that White is the employer and meets the statutory requirement of employing twenty or more employees during the requisite period.  Striegel makes several ADEA claims, including claims of disparate pay and retaliation.

### Material Facts

Striegel, who is now fifty-two years old, was hired by the former Sheriff of Fayette County, James Turner ("Turner") on January 15, 1991, and is currently employed by White who was elected and took office January 19, 1999.  Turner was Sheriff from January 1991 until September of 1998.  Billy Williamson ("Williamson") served as interim Sheriff from September of 1998 until White took office in 1999.

Striegel contends that he was initially hired for the position of deputy sheriff/jailer/dispatcher.  Defendants, however, contend that Striegel was hired as nothing but a "jailer/dispatcher," as his employment record reflects, and that

---

[1] Defendant Commission is implicated in the present action, if at all, because Striegel maintains that the Commission is his joint employer for purposes of his ADEA claim.  Striegel's claim that the Commission is his joint employer is based on the contention that the county controls certain aspects of his employment and because Local Act 93-388 arguably brings county law enforcement officers under the county merit system protection board.  Defendant Commission adopts the statement of facts as set out in defendant White's "Memorandum Brief in Support of Motion for Summary Judgment of Defendant Richard White."

he is not now nor ever has been a deputy sheriff.[2]  Striegel
disputes the contention that he was hired as just a
"jailer/dispatcher" by offering the fact that he was sworn in by
Probate Judge Oswalt along with other deputies hired by Turner,
and he was issued a deputy sheriff's badge, uniform, insignia,
nameplate, and identification card.  Additionally, Striegel
contends that during his tenure with Turner, he performed the
duties of a deputy sheriff.  Striegel's job duties during his
time under Turner included performing jail checks, supervising
inmates, providing medication to inmates, arresting persons,
dispatching for county and local police departments, and on the
road investigations.  Striegel also served and filled out arrest
warrants, domestic papers, subpoenas, grand jury indictments,
incident offense reports, and other court documents.  Striegel
contends that he was a deputy sheriff in all respects except pay.
Striegel's starting pay of $5.00 per hour, was commensurate with
the pay of other "jailer/dispatchers," but it was significantly
less than the starting pay rate for deputies at $9.00 per hour.

     The Commission and White deny that Striegel performed the
same job duties as a deputy sheriff, pointing out that he did not
patrol out in the county; answer calls out in the county; conduct

---

[2]The parties' dispute centers around Striegel's job
classification, and the responsibilities and duties associated
with the positions of "road" deputy and "jailer/dispatcher"
deputy.

sheriff's sales; execute arrest warrants; and serve civil process papers or divorce papers out in the county.  The Commission and White contend that the major distinction between the "deputy" and "jailer/dispatcher" positions is road work out in the county.

According to Turner's testimony, the policy during his administration was to swear in "jailer/dispatchers," reserves and deputy sheriffs alike.  Furthermore, during Turner's administration the "jailer/dispatchers," reserves and deputies all wore the same uniform, including their badges.  Turner testified that "all our guys were deputy sheriffs." (Turner Depo. p. 7).  However, during Turner's administration there were still two distinct positions "jailer/dispatcher" deputy and "road" deputy.  According to Turner's testimony these positions were distinct and separate based on job responsibilities and duties. The core distinction between the positions of "jailer/dispatcher" and "road" deputy is that a "road" deputy's primary duty is to patrol out in the county.  Turner testified regarding the position and pay distinction between "jailer/dispatcher" and "road" deputy as follows:

> Q. Why are road deputies paid more than a jailer/dispatcher?
>
> A. Well, you have a -- I know that Striegel would probably disagree, but you have a little bit more of a risk factor involved.

The Commission and White contend that it was Turner's

4

policy during his tenure to deputize both jailers and deputies so
that the jailers could process the arrest paperwork of
individuals who turned themselves into the jail.  According to
White, individuals who turn themselves in voluntarily after being
notified of arrest warrants are received into the jail and their
arrests are processed by jailers; it is this activity that
Striegel refers to as "serving arrest warrants."  The Commission
and White dispute that Striegel did investigatory work.
According to the defendants, the only time that Striegel came
close to participating in a crime scene investigation was once
when Turner asked Striegel to pick up a door as an errand.
Similarly, the only time Striegel assisted in a call was when he
accompanied Turner on one domestic violence investigation when no
one else was available.  During Williamson's and White's tenures
as Sheriff, Striegel's duties were entirely within the jail; he
never went out on the road, answered calls or investigated
crimes.  The Commission and White admit that there have been
times when "jailer/dispatchers" would perform the duties of
deputies and vice versa on an as needed basis, but they contend
the "jailer/dispatcher" position is still separate and distinct
from the deputy sheriff's position, and that Striegel was not
assigned to deputy duties.  According to Turner, "Officer
Striegel was a jailer/dispatcher deputy, okay? He was not getting
paid to do a road deputy's work . . . ." (Turner Depo. p. 20).

### Disparate Pay Claim

In 1991, Turner hired John Underwood ("Underwood"), Byron Yerby ("Yerby," DOB 3/28/63), and Todd Strickland ("Strickland," DOB 9/22/64), as "road" deputies at the pay rate of $9.00 per hour.  Randy Wright ("Wright," DOB 6/15/66), Jimmy Hollis ("Hollis"), Barry Corkerin ("Corkerin," DOB 11/21/59), David Roberts ("Roberts"), and Striegel were hired as "jailer/dispatchers" at the pay rate of $5.00 per hour. According to Striegel all of these individuals were less qualified than he was because none of them possessed any academy training and/or had full time law enforcement experience. Nevertheless, Underwood, Yerby, and Strickland were paid a starting salary higher than Striegel, and Wright, Hollis, Corkerin, and Roberts were paid a starting salary the same as Striegel.  Moreover, Striegel contends that Wright and Corkerin were given special consideration and advancement by Turner, including higher pay raises than Striegel, and promotions that Striegel was not given the opportunity to apply for.

The Commission and White dispute Striegel's disparate pay claim, and contend that Striegel never asked to be assigned different duties or to be moved from the jail, and that his pay was and always has been commensurate with that of the "jailer/dispatcher" position.  According to the Commission and White, both Wright and Corkerin were given higher salaries when

6

they were rehired after they quit their positions.

Striegel also contends that he applied for and was promised by Turner a civil process server's position. John Swindle was ultimately hired. However, as the Commission and White point out Swindle was over forty years of age at the time and had law enforcement experience. Striegel also contends that Turner continued to hire new deputies, William Rushing (DOB 1/31/64) and Jason Sides (DOB 6/30/75) at the rate of $9.00 per hour rather than to promote him.

After a brief period during which Williamson served as interim Sheriff, White began his term of office on January 19, 1999. Striegel filed his first EEC Charge on December 9, 1998, during Williamson's tenure. According to Striegel, despite his credentials and long term service with the Sheriff's Department, White never offered Striegel a better paying position or in the alternative promote him to full deputy status. Striegel contends that White has hired approximately twelve new deputies since taking office, and of these deputies, only two are over the age of forty. (Striegel Brief p. 8, Exh. L)[3]. The record, however, does not reflect that Striegel applied for or has ever requested a road deputy's position.

---

[3]Striegel list the names, DOB's, and presents the personnel records of the ten deputies under forty that White has hired since taking office but does not identify the two deputies that have been hired during this time that were over forty by name.

In his affidavit testimony, White identified four other full time jailers and one part-time jailer employed at the Fayette County Sheriff's Department during his administration, January 19, 1999 to present, Brian Stough ("Stough" DOB 5/6/68), Jay Warner ("Warner" DOB 12/7/50), Chris Whitley ("Whitley" DOB 2/20/71), Jerry Porter ("Porter" DOB 1/26/47), and a part-time jailer, James Hinton ("Hinton" DOB 8/30/36).  Stough, the Chief Jailer, receives $9.36 per hour, Warner receives $7.80 per hour, Whitley receives $7.78 per hour, Porter receives $8.07 per hour, and Hinton receives $7.00 per hour.  Outside of Stough, Striegel is the highest paid jailer receiving $8.32 per hour, and according to White's affidavit Striegel refused the position of Chief Jailer.

### Retaliation Claim

Striegel contends that White took retaliatory actions against him after learning of his EEOC complaint, including sending him to jail management school; issuing him a new uniform and stripping him of his deputy badge, nameplate, insignia, collar brass, and identification card; changing his shift to a twelve hour schedule; reprimanding him for signing with the initials "D.S." (Deputy Sheriff) after his signature, and; not issuing him a new jacket.  The Commission and White dispute these allegation and contend that White simply made changes to the office under a new administration.  According to White's

8

testimony, the dress code for jailers and deputies was changed because it was less costly for the office and in his judgment better to have "jailer/dispatcher" uniforms that distinguish them from deputy uniforms.  (White Depo. pp. 66).  Everyone performing "jailer/dispatcher" duties received a new and different uniform. *Id.*  White testified that he implemented the twelve-hour shift schedule in an effort to provide jailers with the opportunity for three-day off periods, and he sent all the jailers to jail management school. *Id.*  It is White's position that all of these changes were made as an incidence of his taking office and the change in administrations, and that Striegel was not singled out for special treatment, much less retaliatory treatment.

To support his claims of age discrimination, disparate pay, and retaliation, Striegel presents affidavit testimony that, by opinion of the affiant, he is a deputy sheriff and has served in that capacity since January 15, 1991.  Additionally, Striegel states in his affidavit that during the years 1997-2002, the number of jailers, deputies, matrons, and support personnel working for the Fayette County Sheriff's Department exceeded twenty employees for twenty or more weeks,[4] and he has verified this by reviewing the payroll records maintained at the Fayette County Commission.

---

[4]Striegel simply list the names of thirty three individuals. (Exh. E).

### Analysis

Before addressing the merits of Striegel's various claims, the court addresses certain threshold issues.    First, Striegel pursues claims against White in both his individual and official capacities.  Under the ADEA an individual must be sued in his official capacity because "the relief granted under [the ADEA] is against the employer, not the individual." *See Busby* v. *City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also Welch* v. *Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995).  Accordingly, Striegel's claim against White as an individual must be dismissed.  Additionally, White, as a state official, is entitled to Eleventh Amendment immunity for all monetary claims under the ADEA against him in his official capacity.  *See Parker* v. *Williams*, 862 F.2d 1471, 1475-6 (11th Cir. 1989); *see also Kimel* v. *Florida Bd. Regents*, 528 U.S. 62, 120 S. Ct. 631 (2000).  White would be entitled to absolute sovereign immunity on Striegel's state law claim if Striegel had not already abandoned this claim.  Thus, only Striegel's claims for prospective injunctive relief remain against White in his official capacity.

Striegel, however, is not entitled to any relief against White unless he shows that White meets the statutory definition of "employer" under the ADEA.  Under the ADEA in order to be considered an "employer," White must have employed twenty or more persons during twenty or more weeks during the relevant period.

10

29 U.S.C. § 630(b).

Striegel has presented an affidavit stating that during the years 1997-2002, the number of jailers, deputies, matrons, and support personnel working for the Fayette County Sheriff's Department exceeded twenty employees for twenty or more weeks, and he has verified this by reviewing the payroll records maintained at the Fayette County Commission.  However, Striegel has failed to identify when these employees worked, for how long or for what period of time, whether they were employed for the requisite twenty weeks during the relevant period, or in what capacity.  Instead Striegel has merely grouped all employees that worked at the Fayette County Sheriff's Department during 1997-2002 together as employees of the Sheriff, and given the names of thirty three individuals.

There are several problems with Striegel's position.  Under the ADEA, elected officials and their personal staff are specifically excluded from the definition of "employees" for purposes of the ADEA. 29 U.S.C. § 630(f).  Striegel has listed White as his own employee, and even if he were considered an employee in a non-governmental context, he is not in this context because he is a constitutionally established executive officer of the State of Alabama.  *See King v. Colbert County*, 620 So. 2d 623 (Ala. 1993).  Furthermore, it is clear from Striegel's affidavit that some of the individuals named should be considered as the

11

personal staff of the Sheriff, and not "employees."  The Eleventh
Circuit in *Equal Employment Opportunity Comm'n v. Reno,* relying
on the Fifth Circuit's reasoning in *Calderon v. Martin County,*[5] a
case holding that a deputy sheriff was not an employee within the
meaning of 42 U.S.C. § 2000e(f) under the personal staff
exemption, confirmed the similarities between the personal staff
exemption under Title VII and ADEA.  *Equal Employment Opportunity
Comm'n v. Reno,* 758 F.2d 581 (1985).  Thus, under *Reno* and
*Calderon,* a deputy sheriff is not an "employee" within the
meaning of the ADEA, but rather is a member of the Sheriff's
personal staff because of the nature of the position, which vests
nearly all duties, responsibilities and discretions of the
Sheriff in the deputy.  *See Terry v. Cook,* 866 F.2d 373, 377
(11th Cir. 1989)(The deputy sheriff is the "alter ego" of the
Sheriff).  Likewise, while this court is not aware of any
decision in this circuit holding that jailers are or are not to
be considered under the personal staff exemption for the Sheriff,
it is not illogical to consider them so under *Lancaster v. Monroe
Co., Ala.,* 116 F.3d 1419 (11th Cir. 1997).  In *Lancaster* the
Eleventh Circuit found that jailers, like deputies, are
responsible to the Sheriff for state-mandated duties such as the
Sheriff's duty to maintain legal custody of the jail, and they

---

[5]"Adopted as the law of the Eleventh Circuit by virtue of
*Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en
banc)." *EEC v. Reno,* 758 F.2d 581, 584 (11th Cir. 1985) n. 8.

are therefore state actors. *Id*. at 1431.

Striegel indicates in his brief in opposition to White's motion for summary judgment that White hired twelve new deputies after he became Sheriff in January of 1999, two being over forty and ten being under forty. (Striegel Brief p. 8). The court can identify by name eleven deputies on the list of employees of White provided by Striegel, the ten that Striegel identifies as the ten under forty who were hired by White and one who was hired by Turner. According to the court's reasoning there must be two more deputies on the list because Striegel indicated that White had hired twelve new deputies, ten under forty and two over forty, which brings the total number of deputies on the list to thirteen. Striegel also lists himself as a deputy. Included on Striegel's list are five jailers, Stough, Porter, Whitley, Warner, and Hinton, and if, following the logic of *Lancaster*, jailers are also exempt as personal staff there are only eleven employees listed. *See Lancaster*, 116 F.3d 1419.

In any event, as mentioned above, Striegel has not presented any evidence bearing on when these individuals worked for White, and whether or not they worked for the statutory length of time, twenty weeks during the relevant period. The court, therefore, finds that Striegel has not presented enough evidence to raise a genuine issue of material fact concerning whether White is an "employer." Striegel's affidavit merely states his opinion that

White employed twenty "employees" for twenty weeks during the relevant period.  This hopeful conclusion does not constitute substantial evidence.

### Fayette County Commission as a Joint Employer

Sriegel contends that even if White does not meet the statutory definition of "employer," White and the Commission were so intertwined in employment matters that they should be construed as a "single employer" under the ADEA.  *See Lyes v. City of Riviera Beach*, 166 F.3d 1340,1341 (11th Cir. 1999). Striegel argues that the Commission's control over certain aspects of his employment, including salary levels, raises, and personnel records, plus the fact that the County has procured the enactment of a merit-protection statute, Local Act 93-388, establishes that the employment of Striegel is centralized, joint, and integrated.

While the Eleventh Circuit generally accords a liberal standard to the definition of the term "employer," when governmental entities are involved the court will use restraint out of concerns for comity.  In these situations, the court presumes that ostensibly distinct governmental entities are not the same employer under the ADEA.  *Lyes*, at 1344.  In order to establish that the Commission is his joint employer, Striegel must **clearly** overcome this presumption.  Striegel may do this in one of two ways; show that the government established such a

structure to escape liability, or that "one entity exerts or shares control over the fundamental aspects of the employment relationships of another entity to such a substantial extent that it clearly outweighs the presumption that the entities are distinct." *Id*. at 1345.  Striegel has not alleged nor attempted to prove fraud on the part of the government.  Rather, he argues that the County exerts and/or shares control over the fundamental aspects of his employment to such an extent that it should be considered Striegel's joint employer.  In analyzing whether an entity is a joint employer, the courts will generally focus on two factors utilized by the National Labor Relations Board ("NLRB"), the interrelation of operations and the centralized control of labor.  *Id*.  As indicia of control, the court looks to the common law of agency for factors such as: "the authority to hire, transfer, promote, discipline, or discharge; the authority to establish work schedules or direct work assignments; and the obligation to pay or train the charging part." *Id*.

Striegel argues that both the Sheriff and the County are involved with the details of his employment.  Striegel maintains that the Sheriff is responsible for the everyday aspects of his employment including the hiring, transfer, assignment of work duties and schedules, promotions, and discipline, while the Commission is responsible for setting the budget, which ultimately determines his salary and raises, and for keeping and

15

recording his personnel records.

Striegel argues, moreover, that Local Act 93-388 brings the Sheriff's deputies, "jailer/dispatchers," matrons, and support personnel working in the Fayette County Sheriff's Department under the Fayette County merit system, which places limits on the Sheriff's right to terminate these individuals.  The plain text of Act No. 93-388 appears to manifest a legislative intent to make it applicable to the Sheriff's support personnel.  The caption, which is not law, states that the purpose of Act No. 93-9388 is to establish a merit system for the county law enforcement officers.  Section 2 defines "employee" as "any law enforcement officer, radio operator, jailer and law enforcement support personnel, not excepted by Section 3 of this act, who is employed in the service of Fayette County."  Section 3 clearly states that the **"act shall apply to all law enforcement officials"** ... except: (a) persons holding elective offices."  Only the Sheriff himself is elected to office.  Deputies and jailers are not.  Section 11 refers to the "Sheriff's" right to terminate any probationary employee, and section 12 refers to a newly elected Sheriff's right to select a chief deputy.  The pertinent parts of Local Act No. 93-388 read as follows:

> Providing for the establishment of a merit system for the county law enforcement officers, radio operators, jailers and law enforcement support personnel in Fayette County; and providing for a merit system board governing the removal and official conduct of such county employees.

16

*Be it Enacted by the Legislature of Alabama:*

**SECTION 1.**   This act shall apply only to Fayette County, Alabama.

**SECTION 2.**   As used in this act, unless the context clearly requires a different meaning:

(a) "county" means Fayette County;

(b) "employee" means any law enforcement officer, radio operator, jailer and law enforcement support personnel, not excepted by Section 3 of this act, who is employed in the service of Fayette County or any board, agency or instrumentality thereof;

(c) "merit employee" means any such employee who shall have completed one year of probationary employment;

(d) "board" means the merit system board created by this act;

(e) "appointment authority" means in the case of employees in the offices of the elected officials of the county, such elected officials, and means, in the case of all other county or municipal employees, the county governing body, or the board or other agency supervising their work.

**SECTION 3.**   The provisions of this act shall apply to all law enforcement officials and employees in the service of the county or any board, agency or instrumentality thereof except:

(a) persons holding elective offices;

(b) member of appointive boards, commissions and committees;

(c) person whose employment is subject to the approval of the United States government or any agency thereof.

**SECTION 4.**   All employees to whom the provisions of this act apply shall be governed by merit system rules and regulations governing dismissals, suspensions, lay-offs and terminations prescribed in this act, administered by the merit system board, the creation of which is provided in Section 5 hereof. Presently employed persons shall remain in their respective employments during good behavior; but nothing herein shall be construed to prevent or preclude the removal of such an employee for cause in the manner hereinafter provided and such employees shall be subject to all the provisions of this act.

\* \* \*

17

**SECTION 11.**   ... A probationary employee may be discharged by the sheriff or a governmental entity at their pleasure at any time before the expiration of one year from his appointment.  After he shall have served for one year in the position to which he was appointed or employed, such employee shall become a merit employee.

**SECTION 12.**  Whenever a new sheriff is elected or appointed, he may appoint any person as his chief deputy sheriff, provided such person meets the minimum standards for law enforcement officers as prescribed by the general laws of the state. The person holding the position of chief deputy sheriff immediately preceding such appointment of a chief deputy may be reduced in rank. ...

Alabama Local Act No. 93-388.

The Alabama legislature has the power to alter the relationship between a County Commission, Sheriff, and his deputies and jailers.  Nevertheless, Alabama courts have consistently held that local acts, similar to the one in question in the instant case establishing merit system protection for county law enforcement officers, do not alter the status of deputies as state employees.  *See Whitten*, 677 So. 2d 778 (Ala. Civ. App. 1995); *see also Hooks v. Hitt*, 539 So. 2d 157 (Ala. 1988)(holding that investigators were employees of the state because they worked for the district attorney who was an employee of the state by law); *Terry v. Cook*, 866 F.2d 373 (11th Cir. 1989)(holding that deputy sheriffs were the general agents of the Sheriff who was an executive officer of the state).

Specifically, the Commission and White rely on *Whitten v. Lowe*, 677 So. 2d 778 (Ala. Civ. App. 1995) to dispute that Local

18

Act 93-388 affects the employment status of the Fayette County Sheriff and his deputies, jailers, dispatchers, and other support personnel.  The Alabama Court of Civil Appeals in *Whitten*, applying standard measures of statutory construction to Act 82-206, a merit-protection act with language that resembles the language in Local Act 93-388, found that Sheriffs and their deputies were not covered by that act. *Id*.  The pertinent parts of Act No. 82-206 are:

> **"Section 1.** ... "employee" means any person, including law enforcement officers, not excepted by Section 3 of this Act, who is employed in the service of Marshall County ...
>                         * * *
> **Section 3.**   The provisions of this Act, shall apply to all officials and employees in the service of the County . . . (a) persons holding elective offices; . . .
>
> **Section 4.**  All employees to whom the provisions of this Act apply shall be governed by rules and regulations prescribed in or promulgated pursuant to this Act, administered by the Personnel Board ...

Alabama Local Act 82-206; *see also Whitten*, 677 So. 2d at 779. The Court of Appeals in *Whitten* reasoned that because Sheriffs are state officials specifically excluded from the act under section three, and deputies are the "alter egos" of Sheriffs under Alabama law, the act can not apply to deputies because they are state employees and not county employees.  *Whitten*, 677 So. 2d at 779.

Striegel, however, points out that the merit-protection

19

statute in *Whitten* pertains only to Marshall County employees, and it differs from Local Act No. 93-388. *Id.*  This is true, but the court's reasoning in *Whitten* equally applies to Act No. 93-388.  The Sheriff, a state elected official, is excepted from the act in section three of the Act, and inasmuch as deputies are the "alter egos" of the Sheriff, they must be state employees as well. Similarly, under Alabama law a jailer "is not a county employee because jailers are responsible to the Sheriff for state-mandated duties and carry out the Sheriff's duty to maintain legal custody of the jail. Opinion A.G. No. 2001-217 citing *Lancaster v. Monroe County*, 116 F. 3d 1419 (11th Cir. 1997).

Even assuming *arguendo* that deputies and jailers were not excluded under Local Act No. 93-388, the act only gives deputies, jailers, dispatchers, and other support personnel an avenue of appeal should the Sheriff dismiss, suspend, lay-off or terminate them without cause.  At most this would only give the county control over one aspect of their employment.  The Sheriff would still retain "the authority to hire, transfer, promote, and discipline; the authority to establish work schedules or direct work assignments; and the obligation to pay or train the charging part." *Id.*  Control over a single aspect of employment does not constitute sufficient control to make the County a joint employer.  Additionally, if the County personnel policy does

apply to Fayette County deputies and jailers it is at the discretion of the Sheriff under Alabama law.  "A local government 'must have power in an area in order to be held liable for an official's acts in that area.'" *Turquitt*, 137 F.3d at 1291 citing *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996).

In order to establish that the Commission is his joint employer, Striegel had to **clearly** overcome the presumption that the County and the Sheriff are distinct governmental entities under Alabama law.  The court finds that Striegel has not overcome this presumption.

### Striegel's Disparate Pay Claim

Even if Striegel could have overcome the various jurisdictional problems, he still would have to prove intentional age discrimination.  As with claims for employment discrimination under Title VII, age discrimination claims are analyzed in accordance with the burden-shifting framework of *McDonnel Douglas/Burdine.  Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Striegel claims that he was not paid as much as other deputies who were younger and less experienced than he.  In order to show a *prima facie* case for disparate treatment in wage discrimination, Striegel must establish that: 1) he is a member of a protected group of persons between 40 and 70; 2) he received low wages; 3) similarly situated persons outside the protected age group received higher wages; and 4) he

21

was qualified to receive the higher wages.  *See Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). Striegel has not met his initial burden of establishing a prima facie case of discrimination.  Even if he had, the defendant can rebut this presumption by offering a legitimate nondiscriminatory reason for the alleged discrimination.  According to Turner's testimony even though "jailer/dispatchers" wore the same uniforms as "road" deputies and were sworn in the same as "road" deputies, the two positions were distinct and separate, and "road" deputies received higher pay because of the risk of working out in the county.  Striegel has not offered substantial evidence to rebut this reason.  White also testified that under his administration a "jailer/dispatcher" does not receive the same rate of pay as a deputy working out in the county.  Although Striegel alleges that he is a deputy, there is no evidence outside his own personal belief that he has ever worked in anything other than a "jailer/dispatcher" capacity.  Additionally, there is no evidence that Striegel has ever requested to do anything other than the "jailer/dispatcher" position or to patrol out in the county. Striegel merely quarrels with the Sheriff's decision to give a pay differential to those individuals patrolling out in the county.  Striegel's pay rate was based on the duties he performed, those of a "jailer/dispatcher."  Assuming *arguendo* that Striegel has established a prima facie case, he has not

22

presented any evidence to rebut the non-discriminatory reason for
the difference in pay that White says was in accordance the job
duties that Striegel admits he performed, jailer. (Plaintiff's
Response, p. 15).   Thus, Striegel has not proven that White's
legitimate, non-discriminatory reason is a pretext for age
discrimination.

### Striegel's Retaliation Claim

In order to establish a claim of retaliation, Striegel must
show: 1) he engaged in protected activity; 2) his employer was
aware of the activity; 3) he suffered an adverse employment
action; and 4) there was a causal link between his protected
activity and the adverse employment action.  *Maniccia v. Brown*,
171 F.2d 1364 (11th Cir. 1999).   The underlying alleged
discrimination that Striegel complained of in his EEC complaint
of December of 1998, which constituted the basis of his protected
activity, related to his employment by Turner and Williamson from
January of 1991 to December of 1998.   Striegel, however, alleges
that White retaliated against him for participating in this
protected activity shortly after White took office January 19,
2000.   Under Alabama law, a Sheriff's deputies and jailers serve
at his pleasure and depart with him at the end of his term.  *See
generally Terry v. Cook*, 866 F.2d 373, 377-8 (11th Cir.
1989)(discussing a Sheriff's prerogative to refuse to rehire
politically disloyal deputies, and the need for ex-employees of

the former Sheriff to seek reinstatement); *Turquitt v. Jefferson Co.*, Ala., 137 F.3d 1285, 1289 (11th Cir. 1998)(stating that "[t]he sheriff appoints, directs, and controls the deputies and jailers who work at the jail." Ala. Code § 14-6-105"); *see also Tanner v. McCall*, 625 F.2d 1183, 1187 (11th Cir. 1980)(discussing under Florida law, which is akin to Alabama law, a Sheriff's reappointment of former Sheriff's staff). Regardless of whether or not each successive Sheriff during Striegel's tenure required him to officially apply for a position within the incoming Sheriff's administration, each term of employment under Sheriffs Turner, Williamson, and White is separate and distinct. Striegel claims that White retaliated against him by stripping him of his uniform, collar brass, name tag, badge, and insignia, some thirteen months after he filed his EEC Charge against Turner and Williamson; and again in December of 2000, some twenty four months after he filed his EEC Charge, when he reprimanded Striegel for initialing his signature with a "DS" for deputy sheriff.

Under Alabama law and Eleventh circuit precedent, a Sheriff acts as the final policy-making authority for the state. Alabama Code § 14-6-1 (1995), bestows upon the Sheriff "the legal custody and charge of the jail in his county and all prisoners committed thereto." *Turquitt*, 137 F.3d at 1289. "The sheriff appoints, directs, and controls the deputies and jailers who work at the

jail.  Ala. Code § 14-6-105."  *Id.*; *see also Whitten v. Lowe*, 677
So. 2d 778 (Ala. Civ. App. 1995); *see also Terry v. Cook*, 866
F.2d 373 (11th Cir. 1989); *Parker v. Williams*, 862 F.2d 1471 (11th
Cir. 1989).  When White took office in January of 1999, it was
within his discretionary authority to order new uniforms, assign
new work schedules and shifts, send his "jailer/dispatchers" to
training for jail administration, and to distinguish between
personnel that work in the jail and those who patrol in the
county.  Striegel has not presented substantial evidence to
suggest that any of Sheriff's White's acts were attributable to
an age bias.  Striegel, instead, is quarreling with White's right
to make these executive decisions.  Striegel must present more in
order to overcome summary judgment.  White testified that he made
these changes as part of the changes he made under his
administration, and Striegel has not presented evidence to rebut
White's proffered explanation.

Finally, Striegel alleges that White retaliated against him
by failing to promote him to "road" deputy when he took office.
Striegel, however, has not presented any evidence that he applied
for or even ask for a change in job assignments.  Striegel
throughout his tenure has always worked in the jail as a
"jailer/dispatcher."  Striegel has not presented evidence that he
requested or applied for any other position when White took
office, or that he was rejected for a "road" deputy position.

25

Striegel has failed to establish a prima facie case of failure to promote on the basis of age and accordingly this claim is without merit.

### Conclusion

For the foregoing separate and several reasons summary judgment for the Commission and White will be granted.  A separate and appropriate order will be entered.

DONE this ____22ⁿᵈ____ day of October, 2002.

WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE